**J.M.F., Plaintiff–Appellant,**

v.

**William A. EMERSON, M.D., and Hematology Oncology Consultants, Inc., Defendants–Respondents.**

**No. 55076.**

Missouri Court of Appeals,
Eastern District,
Division Two.

March 7, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 12, 1989.

Application to Transfer Denied
May 16, 1989.

John Joseph Hummel, St. Louis, for plaintiff-appellant.

Joseph M. Kortenhof, Thomas L. Stewart, St. Louis, for defendants-respondents.

GARY M. GAERTNER, Judge.

Plaintiff-appellant J.M.F. appeals from trial court's order dismissing her negligence action against her employer, defendant-respondent Hematology Oncology Consultants, Inc., (hereinafter employer) and its president, defendant-respondent Dr. William A. Emerson, M.D. Appellant alleged that Dr. Emerson negligently directed appellant to draw blood from an AIDS patient. Appellant alleged that her employer was negligent for failing to provide safe instruments to perform the task assigned to her. The trial court dismissed appellant's action for failure to state a claim upon which relief could be granted. We affirm.

Appellant began working for employer in January 1986.[1] On April 7, 1987, appellant was directed by Dr. Emerson to draw a blood sample from a patient who was infected with Acquired Immune Deficiency Syndrome (AIDS). Dr. Emerson instructed appellant to use a lancet in performing this task. After appellant finished drawing the blood, appellant, Dr. Emerson and a nurse allegedly became involved in a disagreement regarding disposal of the instrument that was used to draw the blood. The disagreement allegedly caused confusion during appellant's collection of the instrument thereby causing her to cut her finger with the instrument which had just been used to draw blood from the AIDS patient.

Appellant filed her action alleging that Dr. Emerson was negligent in that he knew appellant was not trained to draw blood from an AIDS patient. Appellant further alleged that Dr. Emerson and a registered nurse were both in the examination room with appellant and the AIDS patient, were both trained to handle an AIDS patient, but Dr. Emerson nevertheless directed appellant to draw the blood. Appellant also alleged that Dr. Emerson was negligent in instructing appellant to use a lancet instead of a syringe to obtain the blood sample, in that using a syringe would have been a safer method. Appellant also asserted that Dr. Emerson was negligent in initiating the disagreement with appellant, causing confusion at the time she was in the process of collecting and disposing of the equipment. Appellant asserted that Dr. Emerson's negligent acts caused her to cut her finger thereby exposing her to the AIDS virus. Appellant stated that she does not know and will not know for an indeterminate amount of time whether she is contaminated with the AIDS virus.

Count II of appellant's petition alleged that Dr. Emerson was per se negligent in utilizing the services of appellant because he knew that appellant was not licensed to draw blood from the AIDS patient in violation of RSMo § 335.016(7) (1986). Appel-

1. Appellant states in her petition that she was hired as a receptionist/secretary. The injury report filed by respondent Hematology with the Division of Workers' Compensation listed appellant as a medical assistant.

lant alleged in Count III that employer was negligent in directing her to use a lancet to draw the blood and failing to warn her of the dangers associated with using a lancet on an AIDS patient.

Respondents filed motions to dismiss arguing that appellant's claim was barred by RSMo § 287.120 (1986) of the Workers' Compensation Law and that said action otherwise failed to state a claim upon which relief could be granted. The trial court ruled that appellant failed to state a claim and dismissed her action. On appeal appellant first argues that Dr. Emerson was a supervisory employee who committed misfeasance. Appellant asserts, therefore, that her action is not precluded by the Worker's Compensation Law.

Initially we note that in reviewing the sufficiency of a petition challenged by a motion to dismiss, we afford the petition its broadest intendment, treat the facts alleged as true, and construe the allegations favorably to the plaintiff in order to determine whether they invoke principles of substantive law. *McCoy v. Liberty Foundry Co.*, 635 S.W.2d 60, 62–63 (Mo.App., E.D. 1982).

■ The law regarding the liability of an employee to a fellow employee injured during the course of her employment was fully set forth in *State ex rel. Badami v. Gaertner*, 630 S.W.2d 175 (Mo.App., E.D.1982) (en banc). An employer is immune from common-law liability for a breach of its duty to provide a reasonably safe place to work. *Parker v. St. Louis County Water Co.*, 668 S.W.2d 182, 183 (Mo.App., E.D. 1984). *See* RSMo § 287.120.1 (1986). Likewise an employee chosen to implement that duty enjoys the same immunity for mere failure to discharge that duty. *Badami*, 630 S.W.2d at 179, 180–81. In *Badami*, this court established that in order to state a claim against a supervisory employee, the injured employee must allege something more than the general failure to fulfill the general duty of supervision and safety. *Id.* The *Badami* court did not enumerate what acts would constitute actionable negligence, but rather suggested a case by case approach. *Id.* at 180–81. The question

before us is whether the acts of respondent Emerson constitute that "something extra" as set forth in *Badami*.

This court more recently addressed this question in *Craft v. Scaman*, 715 S.W.2d 531 (Mo.App., E.D.1986). In *Craft*, the employee-plaintiff was employed at a fireworks factory owned by a Missouri corporation. The defendant, president of the company and supervisor of the factory, negligently applied friction to a spinning reel of fuse while attempting to assist the employee with a malfunction of the equipment. A flash fire ensued that injured plaintiff. We held "that the 'something extra' required to impose tort liability upon a corporate officer includes any affirmative act, taken while the officer is acting outside the scope of the employer's responsibility, that breaches a personal duty of care the officer owes to a fellow employee." *Id.* at 537. In *Craft* the defendant had stepped out of his supervisory role and into the role of a co-employee. *Id.* at 537–38.

■ But in the case before us, plaintiff has failed to allege anything other than a breach by defendant of his non-delegable duty of proper supervision owed to the corporation. Appellant sets forth four allegedly negligent acts committed by Dr. Emerson. First, Dr. Emerson knew that appellant was inadequately trained as to the handling of blood samples from an AIDS patient but nevertheless directed her to draw blood from an AIDS patient. Second, Dr. Emerson did not appoint himself or an available registered nurse to draw blood from the AIDS patient. Third, Dr. Emerson instructed appellant to use instruments that were not proper and safe for performing the blood drawing task. Fourth, Dr. Emerson initiated a discussion regarding the disposal of the instruments used to draw the blood sample which allegedly confused appellant at the time she was disposing of said instruments. We believe each of these acts was within Dr. Emerson's non-delegable duty of safe and proper supervision which was owed to his employer, respondent Hematology Oncology Consultants, Inc. Thus, appellant has failed to

**582**

plead actionable negligence. *See Parker,* 668 S.W.2d at 183.

■■■ Appellant also asserts on appeal that Dr. Emerson was per se negligent in violating RSMo § 335.016(7) (1986). Section 335.016(7) states:

> "Practical nursing" is the performance for compensation of selected acts for the promotion of health and in the case of persons who are ill, injured, or experiencing alterations in normal health processes. Such performance requires substantial specialized skill, judgment and knowledge. All such nursing care shall be given under the direction of a person licensed in this state to prescribe medications and treatments or under the direction of a registered professional nurse;

Appellant reads this statute to mean that one must be a licensed practical nurse in order to draw blood from an AIDS patient. We find no such requirement in the statute nor does appellant point to any authority supporting the proposition that drawing blood from an AIDS patient is one of the "selected acts" encompassed in the statute. In the absence of such authority we decline to hold that the facts set forth in the petition constituted a violation of the statute. Furthermore, a cause of action for civil damages does not necessarily arise from the violation of a statute. *See Vandeven v. Seabaugh,* 753 S.W.2d 46, 47 (Mo.App., E.D.1988). Appellant's first point is denied.

■■■ In her second point appellant argues that the court erred in dismissing her action against employer. Appellant alleged in her petition that employer was negligent in directing her, through Dr. Emerson, to use a lancet to obtain the blood sample. The essence of appellant's argument is that employer provided her with and directed her to use an unsafe instrument. We believe this claim falls directly within the purview of RSMo § 287.120.1 (1986) for appellant alleges no more than a failure to provide safe working conditions. *Badami,* 630 S.W.2d at 180. Point denied.

Having found no error, we affirm the trial court's dismissal of appellant's action.

GRIMM, P.J., concurs.

KAROHL, J., dissents.